McIlvaine, J.,
dissenting: For the third proposition in the foregoing syllabus I would lite to substitute the following :
3. In such case, if a loan is made for a less time than the whole period, and the same is “ well secured by mortgage upon real estate ” as directed by the will, the executors have no authority, before maturity, to change such securities for •the mere accommodation .of the borrower, and without any intent or purpose to benefit the trust estate; and if such •change is made, without the assent of the beneficiaries, the •executors assume the risk of any loss resulting therefrom.
And in my opinion the fifth proposition of the syllabus ought to be modified so as to read as follows:
5. The maxim that every man is presumed to know the law, applies to trustees; but they may be exonerated from losses resulting from their ignorance of the law, in eases where they exercise proper diligence and precaution, and act upon the advice of counsel, provided the counsel is fully informed as to the facts material to the question or subject-matter upon which his legal opinion .is taken.
The facts deducible from the testimony set out in the record of this case are stated (with the exceptions hereinafter mentioned) in the opinion of the court. These facts, in my judgment, show, at least, two distinct violations of duty on the part of defendants, either of which renders them per.-sonally liable to the plaintiffs to account for the lost fund: namely,
1st. The exchanging of the mortgages first taken, — which were undoubted securities for the loans made — for the “ Hepler mortgage,” solely for the accommodation of the borrower, and without the assent of the beneficiaries.
2d. The cancellation of the Hepler mortgage, and accept-ance of the “ mill mortgage ” as the sole security for the money loaned.
I admit that trustees, in all cases, may, and should, change ¡securities when the interest of the trust estate requires it, or where it is reasonably believed that the change will be ’beneficial to the estate. But I deny that trustees, in any *451 case (without the assent of the beneficiaries), may change securities for the mere accommodation of the debtor, and without any intent or purpose to benefit the estate. All unnecessary intermeddling with good securities ought and does impose the risk upon the intermeddler. That such is the rule, where the securities (other than personal securities) come into the hands of the trustees directly from the founder of the trust, is not doubted. And that this rule applies in such cases, even though the declaration of trust contains express authority to change securities, has been frequently held. See Tiffany and Bullard on Trusts, etc., 615, and cases cited.
If express authority, in such cases, to change securities cannot be exercised unless the interest of the trust fund requires it, I can see no reason why good securities taken by trustees upon their own investment should be the subject of a less prudent rule. “Let well enough alone” is a maxim of common prudence. Tiffany and Bullard, 615, and cases cited.
In surrendering those good securities first taken, for the mere accommodation of Rogers, the defendants assumed the risk; and inasmuch as the fund has been lost, a liability has been incurred by them to account to the plaintiffs for the lost fund; and this liability has not been, and could not have been, wiped out by any subsequent but ineffectual effort on their part to secure the loan in accordance with the directions of the will of Chaplin.
What I claim is this: Where a liability has been incurred by trustees by reason of their fault in giving up good securities for insufficient ones, that liability becomes a security in the hands of the beneficiaries, to which they have a right to look in the event of a loss. And all subsequent efforts on the part of the trustees to obtain “ better or additional security” is to be regarded as efforts made for their own indemnity.
I admit that if the loan had afterwards been called in, the liability would have ceased, for the reason that no loss resulted from the default; but such is not this -case, as I *452 understand it. The loan to Rogers never was called in, no new investment was made, or pretended to be made. The first change of securities was made solely for the accommodation of Rogers, because he wanted “ his town property to be clear,” and the second was made for the sole purpose of “ getting better security ” for the old note.
Again, in their subsequent efforts to obtain “better security ” the defendants did not stand in the same relation to the fund as in the first instance. They had no choice as between borrowers — that important opportunity for the-exercise of discretion was lost — the fund was out. All they could do at that time, was to take such “ better security ” as-they could get. And although the better security offered to them might have appeared good enough, yet who can say it would have been accepted if the money had been in their possession ?
It is impossible for me to see how trustees, who have-violated their duty in making or managing an investment,, whereby the foundation of a liability has become fixed, can afterwards, and -touching the same investment, be regarded, in equity, with as much favor as though every duty had been faithfully performed.
As to the question whether this investment was lost by reason of the first change in the securities, I have but two-remarks to make: 1st. The investment was not at any subsequent time “ well secured ” by mortgage on real estate; and, 2d. If the defendants had not cancelled those first mortgages for the mere accommodation of a “ dashing businessman,” these plaintiffs would not have lost their patrimony.
If, however, the defendants cannot be held to account by reason of their first default, because of the subsequent transaction in obtaining the mill mortgage, I still hold that there was no such care and diligence in that transaction as common-prudence requires. If that transaction had been a reinvestment of the fund, it ought not to have been made. A man-of ordinary prudence, knowing the law (and he is presumed to know it), would not have accepted a mortgage upon a moiety of property held in common, which at the time was in the *453 use of a copartnership composed of the tenants in common, without first inquiring as to the conditions upon which the title was held by members of the firm, and as to the indebtedness of the firm. Had such inquiry been made, the defendants would have come to the knowledge that the common estate was partnership property, and that the debts of the firm were largely in excess of all its assets, and that thb mortgage by a copartner in an insolvent firm, upon firm property, for his individual debt, was utterly worthless as a security.
It is no answer to this charge of negligence to say, that the defendants had the fullest confidence in the pecuniary responsibility of the borrower, and that his reputation, in that regard was “ as good as any man in the county.” They were not authorized to look to the pecuniary responsibility of Bogers; the will of Chaplin directed that the loan should be “ well secured by mortgage on real estate.”
Nor will it do to say that this last security was accepted under the advice of counsel, until, at least, it is shown that all the material facts of the case were made known to counsel, which was not so in this case, unless it be inferred from the testimony tending to show that the counsel who gave the advice lived in the neighborhood, knew the property, and was well acquainted with the parties. But I think such inference cannot be fairly drawn from such circumstances, in the face of the testimony of Colonel Nigh (the counsel referred to, and the only testimony upon this point), who testified' as follows: “ All the legal advice I gave them [the executors] was, that the title was in the name of II. C. & B. E. Bogers, jointly; and that there were no liens so far as we could learn from the records.” And on cross-examination Colonel Nigh said, “ I was not called on by Proctor and Anderson, in taking the mill mortgage, to ascertain how much Henry C. Bogers or the film of H. C. Bogers & Co. was in debt. They did not inquire about whether the partnership debts if H. O. Bogers & Co. would come in ahead of their mortgage. They did not ask my opinion on that.”
In either view of this case the defendants ought to be held X) account.